THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANDRE PORTER, | ) |
|       *Plaintiff,* | ) ) ) |
|   v. | ) No. 20 C 4836 ) ) Judge Virginia M. Kendall |
| ILLINOIS CENTRAL RAILROAD COMPANY, | ) ) ) |
|       *Defendant.* | ) |

## MEMORANDUM OPINION & ORDER

Illinois Central Railroad Company ("Illinois Central") is a railroad company with an office in Homewood, Illinois. Andrew Porter was employed there as an assistant supervisor. Upon learning that Porter was secretly recording conversations between two of his coworkers without their knowledge, Illinois Central terminated him. Porter sued Illinois Central for race discrimination and retaliation. Illinois Central moves for summary judgment. (Dkt. 88). For the following reasons, the motion is granted. (*Id.*)

## BACKGROUND

Porter, a Black male, began working for Illinois Central Railroad in the Signal & Communications Department (the "Department"), based in Homewood, Illinois, on March 2, 2010. (Dkt. 97 ¶¶ 1–2, 5).[1] This Illinois Central Department managed the construction and

---

[1] Porter failed to comply with Local Rule 56.1 in two ways. He neither offered "a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, *specific references* to the affidavits, parts of the record, and other supporting materials relied upon" nor included "a statement, consisting of short numbered paragraphs, of any *additional* facts that require the denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon." N.D. Ill. R. 56.1(b)(2)–(3) (as amended Feb. 18, 2021). These errors are unacceptable—and they complicate the task of verifying the factual allegations. While Porter is proceeding pro se now, he was represented by two attorneys during summary-judgment briefing, both of whom should have complied with this long-established rule and failed to do so.

1

maintenance of the railroad's signals and communications apparatus. (*Id.* ¶ 8). Within the Department, there was a "Call Desk" group, which consisted of a Call Desk Supervisor, a Call Desk Assistant Supervisor, and Call Desk Officers. (*Id.* ¶ 12). Together, the group operated the Department call center. (*Id.* ¶ 13). Call Desk Officers documented calls from the public, law enforcement, or the dispatch center reporting issues at train crossings; created trouble tickets, "documentation of any reported incident or issue with the railroad's signal and/or communication equipment"; dispatched field technicians to remedy any problems; and closed trouble tickets based on the information provided by the field technician. (*Id.* ¶¶ 13–14).

Porter started as a Call Desk Officer and, after seven years, became a Call Desk Assistant Supervisor. (*Id.* ¶¶ 1, 6). During the relevant period, Thomas Hilliard was the Assistant Chief of the Department. He managed the capital planning, the hiring of employees, the operating budgets, and the "trouble tickets." (*Id.* ¶ 9). Troy Samuels, the Senior Manager for the Department, reported to Hilliard; Jason Berner, the Manager of the Department, reported to Samuels; and Erik Czarnik, the Call Desk Supervisor, reported to Berner. (*Id.* ¶¶ 10, 15). Czarnik, as the supervisor of the Call Desk group, trained the Call Desk Officers, made sure trouble ticket closures were properly coded, verified work schedules, supervised the approximately twelve Call Desk Officers, assigned the Call Desk Officers their daily tasks, and enforced compliance with the Department's internal processes. (*Id.* ¶ 16). Porter, upon becoming the Call Desk Assistant Supervisor, reported directly to Czarnik. (*Id.* ¶ 18). The duties of a Call Desk Assistant Supervisor included helping set work schedules, generating data reports, managing data, referring any issues to the Call Desk Supervisor as needed, and filling in at the call desk when a Call Desk Officer was absent. (*Id.* ¶ 19).

Illinois Central conducted regular performance reviews for its employees; the three possible ratings were needs improvement, meets expectations, and exceeds expectations. (*Id.*

¶ 22). These reviews were also used in determining an employee's annual raise. (*Id.*) Porter's report fell in the middle of the rating scale: he received a "meets expectation" for failing to meet deadlines and communicate that those deadlines would be missed. (*Id.* ¶ 23). Nonetheless, Porter earned a 1 percent pay raise (in addition to his mid-year 1 percent pay raise). (*Id.* ¶ 25).

Not everything went well for Porter at Illinois Central though. He allegedly "faced discriminatory comments from many of his subordinates and colleagues." (Dkt. 98 at 2). One time, Melisa Watkins, a subordinate, called him a "black boy" in response to an instruction he gave. (*Id.*)

In June 2018, a "concerned citizen" called about a signal failure that supposedly caused the railroad rail and lighting to malfunction, leaving drivers without a warning about an oncoming train. (*Id.* at 3). Czarnik and Aaron Taylor, a Call Desk Officer, "minimized the seriousness of the call and refused to act on it." (*Id.*) Porter reported the incident "to the chain of command," and both men were given a written reprimand. (*Id.*)

On July 8, 2018, Porter worked at the call desk with Jeff Prior, a Call Desk Officer. (Dkt. 97 ¶ 26). At the beginning of his shift, Porter plugged his company-issued cellphone underneath the desk and set the phone to record but never informed anyone about the phone recording. (*Id.* ¶ 27). Porter's shift ended twelve hours later, and he left without grabbing his cellphone because he wanted to record the conversations being held after he left. (*Id.* ¶ 28). Two Call Desk Officers, Watkins and Taylor, began their shifts right after Porter's. (*Id.* ¶ 29). That night, Watkins became cold, so she looked beneath her desk to plug in a space heater and discovered that Porter's phone had recorded the last four hours of her shift. (*Id.*) Watkins immediately called Czarnik and Hilliard to tell them about her discovery, then relayed the same information to Duane Spears, a Human Resources Manager, the next morning. (*Id.* ¶ 30). Maria Penuel, another Human Resources

3

Manager, investigated the report. (*Id.* ¶ 32). Porter admitted then that he placed the cellphone underneath the call desk without anyone's knowledge with the intent of secretly recording Watkins. (*Id.* ¶ 33).

In his defense, Porter asserted that Shawn McAndrew, a white Illinois Central employee who worked in a different department (the Information Technology Program) and with a different supervisor, recorded colleagues and received only a reprimand. (*Id.* ¶¶ 34, 80). He admits though to learning that McAndrew recorded a team meeting, where all the participants knew the recording was happening. (*Id.* ¶ 80). One of the team members requested that McAndrew stop, which he did. (*Id.*) Human Resources learned of the incident and felt, given the facts, that only a reprimand was appropriate. (*Id.*)

Porter filed a Charge of Discrimination against Illinois Central, and six months later, he received a right-to-sue letter. (Dkt. 14 ¶ 8). Porter then filed a two-count complaint in federal court for racial discrimination and retaliation.[2] (*See generally id.*) Illinois Central now moves for summary judgment. (Dkt. 88).

## **LEGAL STANDARD**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court construes all facts and draws all reasonable inferences in favor of the nonmoving party. *Lewis v. Indiana Wesleyan Univ.*, 36 F.4th 755, 759 (7th Cir. 2022). "A genuine issue of material fact exists only if 'there is sufficient evidence'" for a jury to return a verdict for the nonmoving party. *Birch|Rea Partners, Inc. v. Regent Bank*, 27 F.4th 1245, 1249 (7th Cir. 2022) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

---

[2] Porter was represented by counsel at the commencement of his suit and through summary-judgment briefing. After the completion of briefing, his attorneys withdrew. (Dkts. 104, 105). Porter is now proceeding pro se.

4

**DISCUSSION**

**I.     Race Discrimination**

Title VII makes it unlawful for an employer to "refuse to hire … any individual … because of such individual's race." 42 U.S.C. § 2000e-2. A plaintiff can prove race discrimination either directly or indirectly. *McKinney v. Office of Sheriff of Whitely Cnty.*, 866 F.3d 803, 807 (7th Cir. 2017). The direct method requires a plaintiff to show "that the employer's discriminatory animus motivated an adverse employment action." *Coleman v. Donahoe*, 667 F.3d 835, 845 (7th Cir. 2012). The indirect method permits "a plaintiff to prove discrimination by using the burden-shifting approach articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *McKinney*, 866 F.3d at 807; *see also Ferrill v. Oak Creek-Franklin Joint Sch. Dist.*, 860 F.3d 494, 499–500 (7th Cir. 2017) ("The *McDonnell Douglas* framework is just 'a formal way of analyzing a discrimination case when a certain kind of circumstantial evidence—evidence that similarly situated employees not in the plaintiff's protected class were treated better—would permit a jury to infer discriminatory intent.'" (quoting *Smith v. Chi. Transit Auth.*, 806 F.3d 900, 905 (7th Cir. 2015))). Porter argues that he should prevail under either method of proof. The Court disagrees.

**A.  Direct Method of Proof**

The "direct method" necessitates evidence that "points directly" to an employer's discriminatory intent. *Atanus v. Perry*, 520 F.3d 662, 671 (7th Cir. 2008). "'[S]moking gun' evidence of discriminatory intent is," however, "hard to come by." *Coleman v. Donahoe*, 667 F.3d 835, 845 (7th Cir. 2012) (en banc). The primary example is a statement unequivocally saying the employer took an adverse employment action because of the employee's race. *See Collins v. American Red Cross*, 715 F.3d 994, 1000–01 (7th Cir. 2013). Rarely though will "eyewitness testimony" be available to probe "the employer's mental processes." *U.S. Postal Service Bd. of*

*Governors v. Aikens*, 460 U.S. 711, 716 (1983). Porter does not offer this "rare" type of evidence. Illinois Central may have only elevated white employees from 2010 through 2017, and once Porter became the Assistant Call Desk Supervisor—after applying for other managerial positions—he may have been ignored by management. (Dkt. 98 at 5). But none of these facts link his termination to the discriminatory intent of an Illinois Central decisionmaker.

Porter also leans heavily on Watkins's "history of saying racially demeaning things … such as 'black boy.'" (Dkt. 98 at 6).[3] This epithet certainly provides evidence of discrimination—but it suffers from a fatal relevance problem. Title VII requires that the complaining party establish "that race … was a motivating factor for any employer practice." 42 U.S.C. § 2000e-2. That means the relevant decisionmaker or decisionmakers must have acted with discriminatory intent in making the adverse employment decision. Watkins was Porter's subordinate, not his supervisor.[4] "[S]uch statements are only relevant if they come from a decisionmaker, someone involved in the adverse employment decision." *Mateu-Anderegg v. School Dist. of Whitefish Bay*, 304 F.3d 618, 623 (7th Cir. 2002). Watkins had no power to terminate Porter's employment. Therefore, evidence that she acted with racial animus carries no weight.

### B. Indirect Method of Proof

Under the three-step *McDonnell Douglas* framework, a plaintiff must first establish a prima facie case of race discrimination: that is, "(1) she is a member of a protected class, (2) she was meeting the defendant's legitimate expectations, (3) she suffered an adverse employment action,

---

[3] For the first time in litigation, Porter injected a new factual allegation into the mix: Samuels told Porter, "Be glad the union is involved and that the meeting is canceled because I was looking to fire your Black ass." (Dkt. 98 at 7; *id.* 98-2 ¶ 22). The Court will not, however, consider this statement. The affidavit containing the allegation was never turned over in discovery, (Dkt. 110 at 6); Porter himself never mentioned the allegation in his deposition, (*id.*); and Porter utterly failed to comply with Local Rule 56.1 by including this assertion with a record citation, (*see generally* Dkt. 97). *See also Lumpkins-Benford v. Allstate Ins. Co.*, 987 F. Supp. 2d 807, 820 (N.D. Ill. 2013) (citing *Bordelon v. Chi. Sch. Reform Bd. of Trs.*, 233 F.3d 524, 529 (7th Cir. 2000)).

[4] Porter's briefing seems to suggest he meant to bring a hostile work environment claim, but he never stated so in his complaint or his memorandum in opposition to summary judgment.

and (4) similarly situated employees who were not members of her protected class were treated more favorably." *Carson v. Lake County*, 865 F.3d 526, 533 (7th Cir. 2017). If successful, the burden then moves to the defendant to put forth "a legitimate, nondiscriminatory reason for the adverse employment action, at which point the burden shifts back to the plaintiff to submit evidence that the employer's explanation is pretextual." *McDaniel v. Progress Rail Locomotive, Inc.*, 940 F.3d 360, 368 (7th Cir. 2019). Assuming with skepticism that Porter can establish a prima facie case, Illinois Central provided a legitimate reason for the adverse employment action—a felony offense in the workplace—and Porter has not submitted sufficient evidence that the explanation is pretextual. *See* 720 ILCS 5/14-2(a)(1) ("[A] person commits eavesdropping when he or she knowingly and intentionally … [u]ses an eavesdropping device, in a surreptitious manner, for the purpose of … recording all or any part of any private conversation to which he or she is not a party unless he or she does so with the consent of all of the parties to the private conversation); *id.* 5/14-4 ("Eavesdropping, for a first offense, is a Class 4 felony and, for a second or subsequent offense, is a Class 3 felony.").

      Pretext is a "lie," that is, a "'phony reason' for the employment action," *Ferrill*, 860 F.3d at 500 (quoting *Smith*, 806 F.3d at 905), and it "requires more than showing that the decision was mistaken, ill considered or foolish," *Formella*, 817 F.3d at 513–14 (quoting *Ballance v. City of Springfield*, 424 F.3d 614, 617 (7th Cir. 2015)). "[S]o long as the employer honestly believes those reasons, pretext has not been shown." *Id.* (quoting *Ballance*, 424 F.3d at 617). The sole reason Porter offers for establishing pretext is that McAndrew, a white employee, committed the "same offense." (Dkt. 98 at 11). While differing treatment for employees who make the same offense constitutes evidence of pretext, the record indicates these offenses were sufficiently different to justify two separate responses. McAndrew, who worked with a different supervisor, recorded a

7

team meeting, an understandable choice for an employee attempting to remember everything that occurred. (Dkt. 97 ¶ 80). The participants also knew the recording was happening. (*Id.*) When he was asked to terminate the recording, he stopped. (*Id.*) Human resources still disciplined him for the offense, just with a warning. (*Id.*) Porter, in contrast, secretly recorded Watkins and Taylor without their knowledge. (*Id.* ¶ 29). The length of the recording, too, was also longer than a typical work meeting, four hours when discovered. (*Id.*) Considered together, the two scenarios differ significantly, and thus, there is insufficient evidence that Illinois Central acted pretextually in terminating Porter.

## II.     Retaliation

Title VII also protects workers against retaliation for engaging in protected activity. *See Boss v. Castro*, 816 F.3d 910, 918 (7th Cir. 2016). Again, there are two methods of proof: direct or indirect. Both require, though, that an employee engaged in protected activity. *See, e.g.*, *id.*; *Harden v. Marion County Sheriff's Dep't*, 799 F.3d 857, 861 (7th Cir. 2015). Porter has not identified evidence that he ever reported the discrimination against him. His only citation in support is to a different section of his brief. (Dkt. 98 at 12). Illinois Central, on the other hand, provides detailed information from the record contradicting that unsupported assertion. (Dkt. 110 at 12). Czarnik, Berner, Samuels, and Hilliard said nothing of a complaint from Porter, and perhaps most tellingly, Porter never remembered making the complaints. (Dkt. 97 ¶ 49). Thus, Porter's retaliation claim cannot establish this first essential condition and, thus, fails.

## CONCLUSION

For these reasons, the Defendant's Motion for Summary Judgment is granted. (Dkt. 88).

_____
Virginia M. Kendall
United States District Judge

Date: March 20, 2023